UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case Number 18-20286

v.                                            Honorable David M. Lawson

LONNIE SHUMAKER,

        Defendant.
_____/

**<u>ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE</u>**

Defendant Lonnie Shumaker has filed a motion (supplemented later by his attorney) asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Shumaker has served approximately 27 months of a 42-month prison sentence for wire fraud. He argues that a sentence reduction is justified by his medical condition (obesity) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. Because Shumaker has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

Shumaker pleaded guilty to one count of aiding and abetting wire fraud, 18 U.S.C. § 1343. The Honorable Avern Cohn sentenced him on May 6, 2019 to 42 months in prison. The defendant is confined by the Bureau of Prisons (BOP) at Allenwood FCI in White Deer, Pennsylvania, which is a medium security facility that houses around 1,070 inmates. He has served 26 months or around 62% of his custodial sentence. Public records of the BOP indicate that the defendant is scheduled

to be released from prison on May 3, 2022. According to BOP records, Shumaker is 41 years old (however, the motion filed by counsel indicates that he is 49).

On September 23, 2020, Shumaker filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The Court appointed counsel and set a schedule for further briefing on the motion. The defendant's appointed counsel has filed a supplemental motion, and the government filed a response opposing both motions on the merits. The defendant also filed a reply.

The most recent data disclosed by the BOP indicates that there are 10 active coronavirus cases among inmates and 33 among staff in the medium security facility at Allenwood, although 560 inmates and 16 staff previously were diagnosed and now have recovered. Reports indicate that no inmates have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid*. "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid*. (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and

compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Shumaker relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, --- F.3d ---, No. 20-3654, 2021 WL 50169 (6th Cir. Jan. 6, 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move

for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 2021 WL 50169 at *1 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)).  It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at *2.  It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Shumaker argues that one medical risk factor — obesity —exposes him to an elevated risk of complications from the highly-contagious novel coronavirus.  In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular

disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). It is appropriate to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 2021 WL 50169, at *4.

The parties agree that the defendant's medical records indicate that he is 5'11" tall and that he has weighed between 291 and 325 pounds over the last two years. Those figures correspond to a body mass index (BMI) between 40 and 45, which is well above the threshold of 30 that is recognized by the CDC as triggering an elevated risk for persons who contract the coronavirus. CDC Risk factors, *supra* ("Having obesity, defined as a body mass index (BMI) between 30 kg/m2 and <40 kg/m2 or severe obesity (BMI of 40 kg/m2 or above), increases your risk of severe illness from COVID-19."). The government does not dispute, and federal courts regularly have held, that obesity poses a sufficient medical risk to establish extraordinary circumstances weighing in favor of release, at least where the inmate is confined at a facility with an active COVID-19 outbreak. *See United States v. Olawoye*, No. 15-00172, 2020 WL 4559816, at *4 (D. Or. Aug. 7, 2020). The defendant does not assert that he has any other pertinent risk factors, but the government concedes that his obesity at least is sufficient to establish an extraordinary medical risk for the purposes of the second element of the compassionate release analysis.

However, another pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears to be relatively low. Recent reports indicate that the probability of infection at Allenwood, although once quite high, the plus inmates and 33 among staff (who, presumably, are not permitted to report to work or have any contact with inmates while contagious). The government's position that the defendant is at little or no risk is less reassuring considering that Allenwood had quite a severe past outbreak. Nevertheless, the most recent information indicates that the defendant's probability of infection is relatively modest, and perhaps lower than it would be in a home setting, considering that measures taken by the BOP apparently have turned back the spread of the virus among inmates at Allenwood, despite the recent acceleration of the pandemic among the public at large, including

in Pennsylvania, where daily case counts recently have spiked well beyond those reached during the spring surge. *See* Coronavirus Statistics: Pennsylvania, https://www.worldometers.info/coronavirus/usa/pennsylvania/.

"[O]n similar facts this Court has declined to order the release of otherwise healthy . . . inmates with obesity as their only cognizable risk factor, absent other indications of serious medical risk," particularly where they were confined at institutions with few or no active coronavirus cases. *United States v. Price*, No. 15-20472, 2020 WL 5440164, at *5 (E.D. Mich. Sept. 10, 2020) (collecting cases); *see also United States v. Hill*, No. 16-20772, 2020 WL 7240901, at *5 (E.D. Mich. Dec. 9, 2020); *United States v. Douglas*, No. 16-20436, 2020 WL 7225773, at *3 (E.D. Mich. Dec. 7, 2020). There are no distinguishing facts here that warrant a different result, particularly in light of the relatively low risk of infection.

C.

Because the defendant has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not discuss the relevant section 3553(a) factors.

III.

Shumaker has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 85, 94) are **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   January 28, 2021